# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ROY VAN NORTRICK (# 708816)          CIVIL ACTION

VERSUS

RANDY LAVESPERE, ET AL.          NO. 18-0534-JWD-EWD

## RULING AND ORDER

Before the Court is *pro se* Plaintiff Roy Van Nortrick's Motion for Preliminary Injunction (R. Doc. 3). For the following reasons, the Motion for Preliminary Injunction ("Motion") (R. Doc. 3) is **DENIED**. This case is set for a status conference on April 17, 2019 at 10:00 a.m. for the purpose of discussing its readiness for trial, the need for any additional discovery and for the parties to show cause, if any they can, why the Court should not appoint its own expert pursuant to Federal Rule of Evidence 706. The parties should also be prepared to discuss all pending motions at this conference.

### I.     Background

Plaintiff, an inmate at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana filed the instant Motion for Preliminary Injunction ("Motion") in connection with a suit Plaintiff brought against Defendants Randy Lavespere, Paul M. Toce, Tracey Falgout, and the Louisiana Department of Public Safety and Corrections ("Defendants").[1] Per this Motion, Plaintiff seeks an order directing Defendants to provide a Lantus and Humalog/Novalog insulin regime, adequate and timely access to insulin and food, restraint of officers from interfering with access to emergency diabetic treatment, and wheelchair accessible vehicles for transport to medical visits outside of LSP.

---

[1] R. Docs. 1 and 3.

Prior to confinement at LSP, Plaintiff was housed at the Caddo Correctional Center[2] and thereafter, at the Elayn Hunt Correction Center ("EHCC") immediately prior to transfer to LSP.[3] When Plaintiff was transferred from the Caddo Correctional Center to EHCC, his insulin regimen was altered, and he was taken off of a regimen of Lantus and Humalog and prescribed Novolog 70/30 ("70/30").[4] As more fully discussed below, Plaintiff has presented evidence that altering Plaintiff's insulin regime had apparent negative effects on his physical condition, so he was switched back to a regimen of Lantus and Humalog while at EHCC. Then, upon transfer from EHCC to LSP, Plaintiff's insulin regime was again changed to only injections of 70/30. Medical records reveal that Plaintiff's diabetes has been problematic while he has been housed at LSP although there are competing narratives as to why this is so. Despite apparent complications and orders from outside doctors, Defendants have failed to alter Plaintiff's insulin regime.

Plaintiff argues, among other things, that the Defendants' refusal to provide him with the proper insulin amounts to deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution. This claim forms the basis for both Plaintiff's underlying lawsuit and the instant Motion.

## II. Law and Discussion

### A. Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted). *See also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly

---

[2] R. Doc. 24-4, p. 39.
[3] R. Doc. 24-4, pp. 33-34.
[4] R. Docs. 24-4, p. 39; 24-8, pp. 6-26.

carried the burden of persuasion with respect to all four factors"); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("[t]he decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule"). The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court. *See Allied Mlttg. Grp., Inc.*, 878 F.2d at 809.

At all times, the burden of persuasion remains with the Plaintiff as to each of the four elements. Specifically, Plaintiff must establish the following: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).

**B. Plaintiff has Not Met His Burden with Respect to His Claim for a Lantus and Humalog Insulin Regimen**

*1. Factor One*

First, Plaintiff must establish a substantial likelihood of prevailing on the merits of his claim. Based upon the current record, Plaintiff has not succeeded in meeting this element. In order for Plaintiff to succeed in his claim of deliberate medical indifference, he must prove that appropriate medical care has been denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d

1236, 1237 (5th Cir. 1985). Whether a plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle*, 429 U.S. at 106. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). *Farmer* lays out both an objective prong and a subjective prong. *Id*. at 837. The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, under the "subjective" prong of *Farmer*, a plaintiff must show that prison officials acted with a "sufficiently culpable state of mind." *Id.*

The deliberate indifference standard sets a very high bar: a plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Here, Plaintiff argues that Defendants intentionally treated Plaintiff incorrectly.[5] Plaintiff specifically alleges that the 70/30 regimen of insulin provided by Defendants is ineffective for his condition, and his condition instead requires a combination of Lantus and Humalog/Novolog (an intermediate/long-lasting insulin and a

---

[5] R. Doc. 3, p. 2.

rapid/short acting insulin used in combination)[6] and that the Defendants were and continue to be aware of this fact.[7]

Medical records indicate that on at least two occasions (once before and once after Plaintiff was admitted to LSP), outside physicians noted the insufficiency of the 70/30 regimen for Plaintiff's condition and changed Plaintiff's insulin regimen to the regimen Plaintiff was on prior to going to prison, which regimen is the same he seeks in the instant motion.[8] Each of these outside physicians switched Plaintiff to a long-acting injectable insulin once per day to be used in conjunction with another fast-acting insulin injection three times per day (one before each meal), not 70/30 insulin.[9] Despite these orders to change Plaintiff's insulin regimen, LSP doctors refused and continued Plaintiff on a regimen of 70/30 insulin twice per day.

With respect to the instance prior to transfer to LSP, while Plaintiff was housed at EHCC, Plaintiff's condition rapidly deteriorated after being switched from a Lantus/Humalog insulin regimen to a 70/30 regimen, and on June 25, 2016, Plaintiff was admitted to Our Lady of the Lake as a result of low-grade diabetic ketoacidosis.[10] Plaintiff's treating physician at Our Lady of the Lake, Dr. Matthew Buzhardt noted as follows regarding Plaintiff's insulin regimen:

> [Plaintiff] was on a regimen of 35 units of Lantus once a day when he was in the free world. Since going to prison, he was somehow changed to 5 units 70/30 twice a day, clearly not enough coverage for him. But he says even when on appropriate amount of 70/30, this just was a medication that just never controlled his glucoses that well. . . . He came to the ED with nausea and vomiting. . . . I have adjusted his regimen. Going to start him off at 25 units of Lantus at night with continued sliding

---

[6] Injectable insulins may be rapid/short acting, intermediate/long acting, or a mixture. (R. Doc. 24-1, p. 13). The rapid/short acting insulins include insulin aspart (NovoLog), insulin glulisine (Apidra), insulin lispro (Humalog), or regular (Novolin R, Humulin R). (R. Doc. 24-1, p. 13). Intermediate/long acting insulins include, NPH (Novolin N, Humulin N), insulin detemir (Levemir), insulin glargine (Lantus, Tougeo, Basaglar), and insulin degludec (Tresiba). (R. Doc. 24-1, p. 13). Finally, mixtures include insulin aspart protamine (NovoLog Mix 70/30), insulin lispro protamine (Humalog Mix 75/25, Humalog Mix 50/50), NPH/Reg (Humulin 70/30, Novolin 70/30), and insulin degludec/aspart (Ryzodeg 70/30). (R. Doc. 24-1, p. 13).
[7] R. Doc. 3, p. 2.
[8] R. Docs. 3; 24-6, pp. 85-88; 24-8, pp. 6-26.
[9] R. Docs. 24-6, pp. 85-88; 24-8, pp. 24-26.
[10] R. Doc. 24-8, pp. 6-26.

scale coverage and mealtime coverage, and this can be titrated by the prison doctor as needed. I think that his early DKA was due to a change in regimen and not noncompliance. . . .[11]

Plaintiff's final medication list upon discharge from Our Lady of the Lake indicates he was to begin a regimen of Humalog three times daily with meals and insulin glargine (Lantus) daily.[12]

EHCC followed Dr. Buzhardt's instructions and discontinued the 70/30 regimen, but, once transferred to LSP, Plaintiff again began receiving the 70/30 regimen. While receiving the 70/30 insulin, Plaintiff alleges he has suffered from numerous diabetic emergencies, including shakiness, lethargy, various unresponsive states, and in at least two instances, reports indicate that Plaintiff's low blood sugar caused him to suffer from seizures.[13] Numerous inmates have attested to their personal observations of Plaintiff and the aid they have had to render to Plaintiff when he suffers from hypoglycemia, including providing Plaintiff with their own meals, juice, soda, and administering glucose from glucose tubes to ensure Plaintiff's blood sugar levels increase.[14]

For example, one inmate, Tyrone Washington, who was housed with Plaintiff at both Caddo Correctional Center and LSP, observed that while at the Caddo Correctional Center, when Plaintiff was receiving a regimen of Lantus and Humalog, Plaintiff "hardly ever had any of these [low blood sugar] attacks like he does now that he has been at LSP."[15] He saw Plaintiff "go weeks without a low blood sugar episode while he was receiving the proper type of insulin while we were housed in Caddo Parish prior to transfer to DPS&C. Now he suffers all the time, multiple times every week and it is just a matter of time before these people kill him."[16] Regarding one episode of hypoglycemia, another inmate, Christopher Gaudet, attested that in May 2018, "another inmate

---

[11] R. Doc. 24-8, p. 24.
[12] R. Doc. 24-8, p. 25.
[13] R. Docs. 24-6, pp.12, 28, 38, 40, 85; 24-7, pp. 13-4, 15, 27, 44, 46-47, 52-53, 56-67. Emergency personnel responded to at least 20 episodes of hypoglycemia from January 2, 2017 through April 6, 2018.
[14] R. Doc. 30-1, pp. 1-24.
[15] R. Doc. 30-1, p. 16.
[16] R. Doc. 30-1, p. 17.

and [Mr. Gaudet] had to pull a tube of glucose out of Mr. Van Nortrick's mouth because he had almost accidentally swallowed it while his blood sugar bottomed out suddenly and his sugar was too low to know what he was doing."[17]

One particularly troubling incident involving low blood sugar occurred on December 19, 2017, when, following a fall, which fractured his right tibial shaft and lateral malleolus, Plaintiff was admitted to the University Medical Center in New Orleans.[18] On this date, lunch was called late (not until 3:10 p.m.), and as Plaintiff was walking to obtain his food tray, he "fell out in a low blood sugar attack."[19] Since the fracture apparently occurred secondary to a hypoglycemic event, Plaintiff was seen by the internal medicine as well as the orthopedic department. Plaintiff underwent surgery to fix his leg fracture, and was kept in the hospital for "mobilization and monitoring of compartments post-surgery as well as better glucose control."[20] Upon discharge, Plaintiff was ordered to cease using 70/30 injections and begin taking Novolog injections three times daily before meals along with an insulin detemir (LEVEMIR)[21] injection once daily at nighttime.[22] Upon return to LSP, despite the above orders, Plaintiff's insulin regime remained unchanged.

Defendants justify their actions by contending that, while not the treatment preferred or desired by Plaintiff, the 70/30 treatment is adequate[23] and that it is Plaintiff's "noncompliance" with his insulin regime that is the reason why the 70/30 has not worked properly. But this assertion of noncompliance is not clearly supported by the record. Defendants particularly point to the time

---

[17] R. Doc. 30-1, p. 20.
[18] R. Doc. 24-6, pp. 85-88.
[19] R. Doc. 30-1, p. 13.
[20] R. Doc. 24-6, 85.
[21] Levemir is similar to Lantus in that they are both long-acting injectable insulins. *See* discussion, *supra*, at footnote 6.
[22] R. Doc. 24-6, p. 87.
[23] R. Doc. 24-1, pp. 6-8 (Affidavit of Randy Lavespere); R. Doc. 24-2, pp. 1-5 (Affidavit of Tracy Falgout).

period of August 10, 2016 through September 17, 2016, arguing the records show that Plaintiff was not taking his medicines. However, the Medication Administration Records for this time period tell conflicting stories.[24] The handwritten medication administration records indicate that Plaintiff appeared for his morning and evening glucose checks on all days in the aforementioned timeframe, except on seven occasions, and these records include Plaintiff's blood glucose reading.[25] However, the electronic records indicate Plaintiff was a no-show on the above-mentioned dates for both morning and evening glucose checks.[26] Moreover, Plaintiff has attested that he has missed meals, not deliberately, but due to sleeping through the meals due to severe lethargy caused by uncontrolled diabetes.[27] In addition, at times, Plaintiff urges that he simply cannot eat because he is experiencing nausea and vomiting allegedly caused by the ineffectiveness of the 70/30 insulin.[28]

Further, Defendants contend that because Plaintiff's HgA1C[29] levels have improved, his diabetes is, *per se*, effectively managed by 70/30. However, the record does not support such a clear finding of improvement and instead, indicates that Plaintiff's HgA1C levels fluctuate. On June 29, 2016, Plaintiff's HgA1C level was 8.5.[30] On September 9, 2016, after roughly one month of treatment with 70/30, Plaintiff's HgA1C was 10.2%.[31] On January 11, 2017, Plaintiff's HgA1C levels were 12.0%.[32] By May 23, 2017, Plaintiff's HgA1C dropped to 8.3%,[33] but by October 2,

---

[24] R. Doc. 24-4, pp. 152-160.
[25] R. Doc. 24-4, pp. 152, 157.
[26] R. Doc. 24-4, pp. 153-154, 160.
[27] R. Doc. 30-1, p. 30.
[28] R. Doc. 30-1, p. 30.
[29] HgA1C, according to Dr. Lavespere's affidavit, is "a measure of diabetic control . . . . A controlled diabetic will have a HgA1C measure of between 5.7 and 6.4." (R. Doc. 24-1, p. 8). Based on the record, while incarcerated, Plaintiff's levels have never reached those of a "controlled diabetic."
[30] R. Doc. 24-5, p. 78.
[31] R. Doc. 24-5, p. 73.
[32] R. Doc. 24-5, p. 68.
[33] R. Doc. 24-5, p. 65.

2017, it again increased to 9.5%.[34] Considering the fluctuations in Plaintiff's HgA1C level, the fact that kidney function is merely one indicator of the effectiveness of diabetic treatment, and that this number is only one indicator of Plaintiff's kidney health, the Court cannot conclude, as Defendants suggest, that Plaintiff's kidney function has improved since Plaintiff's transfer to LSP, and that this improved kidney function *per se* means Plaintiff's diabetes is being effectively managed by the 70/30 regimen.

Finally, Defendants submit letters from the Louisiana State Board of Medical Examiners sent in response to Plaintiff's complaints against Defendants. They state in pertinent part: "Upon a review and evaluation of the information presently available, the Board has decided to take no further action and close this investigation."[35] However, the fact that the Board terminated their investigation based on "information presently available" is not dispositive. The information, which was available to the Board, is not apparent from the record.

While Plaintiff has presented evidence indicating that he might win at a trial on the merits, there are too many unresolved issues of fact and medical expert opinion to conclude on the record before it that there is a "substantial likelihood" of success so as to warrant a preliminary injunction. Defendants were aware of Plaintiff's prescribed Lantus and Humalog treatment when he was transferred to LSP. The records suggest that once Plaintiff was prescribed a regimen of 70/30 instead of Lantus and Humalog,[36] he began to suffer from complications of diabetes including numerous hypoglycemic episodes, as described above. Further, as previously mentioned, after suffering a fracture, Plaintiff was evaluated by an outside professional and was placed back on a regimen including a long-lasting insulin once daily and a fast-acting insulin three times daily

---

[34] R. Doc. 24-5, pp. 63.
[35] R. Doc. 24-1, pp. 17-18.
[36] R. Doc. 24-1, p. 3.

before meals and specifically, taken off 70/30. These orders were sent to LSP, but LSP continued to administer 70/30 to Plaintiff.[37] However, at this time, the Court cannot conclude this decision was one of deliberate indifference. Therefore, Plaintiff has not demonstrated on this record a substantial likelihood of prevailing on the merits and thus has not satisfied element one.

### 2. Factor Two

Next, the Court finds that Plaintiff has sufficiently established a substantial threat of irreparable injury. As described above, the available medical records support Plaintiff's assertions that his diabetes is not well controlled and that this is due, at least in part, to being given an insulin that does not adequately control his condition. Due to this poor control, Plaintiff has suffered from numerous hypoglycemic attacks, some even resulting in seizures. In addition, as described above, Plaintiff has also already sustained a leg fracture, which required surgery, arguably as a result of a hypoglycemic episode. Numerous other inmates have come forward to testify via affidavits regarding the frequency and severity of what appear to them as Plaintiff's hypoglycemic attacks. The consequences of such poorly controlled diabetes are apparent from the record, and accordingly, Plaintiff has established a substantial threat of irreparable injury.

### 3. Factor Three

Though this Court finds the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted, the Motion must nevertheless be denied due to Plaintiff's failure to meet all four factors. However, regarding the threatened injury versus harm to the non-movant, the Court notes the following observations. First, regarding the threatened injury as to Plaintiff, as indicated by the record, the risks faced by Plaintiff if an injunction is not granted could

---

[37] R. Doc. 24-6, pp. 52, 81.

be severe. Plaintiff has suffered numerous hypoglycemic attacks,[38] and evidence indicates Plaintiff has already suffered grave consequences from these attacks such as bone fractures and seizures.[39] This is indicative of the severity of the threatened injury faced by Plaintiff.

By contrast, regarding the "harm" that would result to the non-movant in this matter in the event an injunction were granted, Defendants point out that the treatment involving Lantus and Novolog is more expensive than continuing to use 70/30.[40] The law is clear, however, that "[t]he denial or delay of necessary medical treatment for financial or other improper motives not based on medical reasons may constitute an Eighth Amendment violation." *Hanna v. Corrections Corp. of America*, 95 Fed. App'x. 531, 532 (5th Cir. 2004). Accordingly, this alleged harm is insufficient to tip the scales in favor of Defendants.

Defendants also assert that if Plaintiff was given the insulin regimen, which he seeks, this would "open the flood gates to additional requests from insulin dependent offenders who may prefer to have insulin injections once per day," which would cause Defendants harm.[41] This assertion is likewise unpersuasive, not supported by the record, and inadequate to shift this factor in favor of Defendants. The insulin regimen Plaintiff argues he should be prescribed includes Lantus injections one or two times daily as well as insulin injections three times daily, prior to each meal, not a once daily injection.[42] Thus, the premise that once daily injections would encourage requests for the Lantus/Humalog regimen from other inmates is fatally flawed, as the

---

[38] Affidavits from seven other inmates recount the numerous times Plaintiff has experienced low blood sugar attacks. R. Doc. 30-1, pp. 1-24. Affiants have attested to witnessing Plaintiff "experience low sugar attacks on occasions too numerous to recount by date," multiple low sugar attacks requiring emergency medical care," and "low blood sugar attacks many times, at least 10-15 times in the last year with ten of those episodes requiring emergency medical care from medical personnel dispatched to the dormitory because of the seizures he experienced." R. Doc. 30-1, pp. 1, 5, and 9.
[39] R. Docs. 24-6, p. 40; 24-7, p. 44; 30-1, p. 9.
[40] R. Doc. 24, p. 18.
[41] R. Doc. 24, p. 18.
[42] R. Doc. 24-4, p. 39. When Plaintiff was transferred from Caddo Correctional Center to EHCC, he was, indeed, prescribed and receiving Humalog three times daily before meals, and Lantus twice daily. (R. Doc. 24-4, p. 39).

regimen does not only include a once daily injection. Finally, if this Court were to grant Plaintiff the relief he seeks, it would be based not on his preference but on established medical need in his case only and would have no bearing on the medical regimen of other inmates. Accordingly, the risks the Plaintiff faces if the injunction is not granted outweigh any harm an injunction may cause to the Defendants. Thus, though inconsequential to the result of this order, element three has been met.

### 4. *Factor Four*

Finally, Defendants assert the relief requested will disserve the public interest. Defendants assert that "the institutional practice of requiring insulin dependent patients confined at LSP to undergo insulin injections and glucose checks twice daily, as Plaintiff is required to do, improves medical personnel's ability to treat and monitor insulin dependent patients, and ensure patient compliance with prescribed treatment."[43] Defendants argue that "Plaintiff has offered no argument or evidence in support of the notion that this Honorable Court should enmesh itself in medical decisions under the circumstances."[44] The Court agrees at this time and on the record now before it. However, Plaintiff has shown that outside physicians have, on at least two occasions, found that a regime of 70/30 does not adequately manage Plaintiff's diabetes and changed his regimen to include both a long-lasting insulin injection, such as Lantus, and a fast-acting insulin injection prior to meals, such as Humalog. Though treating Plaintiff the same as other prisoners may be more convenient, if the treatment does not work for Plaintiff, as suggested by at least some of the evidence before the Court, then treating Plaintiff with the proper regimen may be required and would not disserve the public interest However, there is insufficient evidence to draw that conclusion at this time, and element four has therefore not been met.

---

[43] R. Doc. 24, pp. 19-20.
[44] R. Doc. 24, p. 19.

## C. The Prison Litigation Reform Act ("PRLA")

Defendants argue that a preliminary injection is only meant to preserve the status quo, and thus, the Court is prevented from granting the requested relief because it would require an affirmative act on the part of the prison, which act would change the status quo.[45] The Court is not so persuaded. *Cf. Jones v. Texas Department of Criminal Justice* 880 F.3d 756 (5th Cir. 2018) (where the Fifth Circuit held that a district court erred in denying a preliminary injunction that would have required prison officials to provide the Plaintiff with a special diet for his diabetes); *see also Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ("It is often loosely stated that the purpose of a preliminary injunction is to preserve the status quo." There is, however, no "particular magic in the phrase 'status quo.' The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." "If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury"). But considering that Plaintiff has not prevailed in showing all four necessary elements for instituting a preliminary injunction with respect to this claim, The Court denies his motion.

## D. Plaintiff Has Not Met His Burden with Respect to His Remaining Claims

With respect to Plaintiff's claims for a preliminary injunction directing Defendants to provide adequate and timely access to insulin and food, restraint of officers from interfering with access to emergency diabetic treatment, and wheelchair accessible vehicles for transport to medical visits outside of LSP, the Court finds Plaintiff has failed to meet all four of the aforesaid elements. With respect to these complaints, Plaintiff has failed to present sufficient evidence at this time to show a substantial likelihood of prevailing on the merits or that there is a substantial threat he will

---

[45] R. Doc. 24, p. 20.

suffer irreparable injury if the requested relief is not granted. Furthermore, though repeated diabetic emergencies may constitute irreparable injury, if Plaintiff succeeds on the merits, this may alleviate most, if not all, of Plaintiff's other concerns.[46] In any event, the requisite showing has not been made at this time and the motion is denied as to these demands as well.

### E. Court Appointed Expert

Federal Rule of Evidence 706 states that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing." A main policy justification for this provision "is to promote accurate factfinding." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 6304 (3d ed. 2018). Others include "provid[ing] the trier of fact with a neutral and more reliable perspective on the issues…[and] provid[ing] the parties themselves with reason to moderate their views and move toward settlement." *Id*.

Here, the Court finds multiple reasons for suggesting the use of a court appointed expert. First, the main issues (whether the drug regimen prescribed by Defendants is appropriate or dangerous for this Plaintiff and whether the instability in his condition is being caused by the failure of use the correct treatment plan or Plaintiff's non-compliance) involve highly complex and technical issues beyond this Court's ability to resolve on its own. Second, the record demonstrates that Plaintiff does appear to have a serious medical condition which is not being controlled at the present time. Finally, unlike the usual case involving expert testimony, each side does not have its own independent expert witness. Defendants justify their conduct with their own opinions and

---

[46] According to other inmates, Plaintiff has stated that if he were on the correct insulin regimen, he believes he would not suffer from the many of the complications he currently faces, such as frequent low blood sugar attacks. R. Doc. 30-1, pp. 5, 9, 13, 16.

Plaintiff, an inmate, has no opposing expert other than the medical records of outside treating doctors.

> Appointment of a court expert also may be justified where… only some parties present such testimony, thus depriving the trier of fact of a balanced view of the issues. In such cases, invocation of Rule 706 powers is especially appropriate to protect the rights of an accused, a child, or the public interest. *Id*.

Such is the case here with *pro se* inmate Plaintiff Van Nortrick. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction[47] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties show cause, in writing, on or before March 15, 2019 why this Court should not appoint a qualified expert witness and, if the parties so choose, to submit nominations. The Court further sets a status conference for April 17, 2019 to discuss the issue of a court-appointed expert as well as the status of discovery and the readiness of this case for trial. The parties should also be prepared to discuss all pending motions.

Signed in Baton Rouge, Louisiana, on February 22, 2019.

　　　　　　　　　　　　　　　　　　　　　　　
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[47] R. Doc. 3.